```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

   KATELY                                CIVIL ACTION

   VERSUS                                NO: 10-1057

   CAIN ET AL.                           SECTION: "J" (3)
```

**ORDER**

Before the Court is Benedict Kately's Petition for Writ of Habeas Corpus (Rec. Doc. 3). The Government filed a response (Rec. Docs. 11 and 21). Kately argues that his counsel, Harry Boyer, was ineffective for failure to call two witnesses at trial and for failure to investigate and interview other witnesses. In his Report and Recommendations (Rec. Doc. 22), the Magistrate Judge recommended dismissal of Kately's petition.

The Report and Recommendations correctly summarized the law governing ineffective assistance of counsel claims in habeas writ application. In addition to the extremely deferential standard pronounced in <u>Strickland v. Washington</u>, the United States Supreme Court recently clarified that § 2254(d) "preserves authority to

issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 786 (2011). The Court also stressed that the state prisoner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87. Thus, when reviewing ineffective assistance of counsel claims under § 2254(d), a court "must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 788.

Recommending denial of Kately's writ, the Magistrate Judge could not "say that the state court's decision rejecting petitioner's claim was so beyond the pale that it was not entitled to deference" (Rec. Doc. 22, at 19). The Magistrate reasoned as follows:

> On the contrary, as petitioner notes in his federal
> application, the evidence against him was hardly

conclusive, in that there was no physical evidence connecting him to the crime and his identification was based on a single eyewitness whose testimony was based in part on a dream. In light of those facts, counsel opted to try to discredit the state's case rather than taking the chance of alienating the jury by presenting the testimony of Jordan and Mitchell. Counsel was unsure those witnesses could be relied upon to testify convincingly. Moreover, it was likely that their testimony would have been viewed by the jury with suspicion because they were both closely related to petitioner and, therefore, hardly disinterested. See, e.g., Ball v. United States, 271 Fed. App'x 880, 884 (11th Cir. 2008) (Petitioner's wife, brothers, and cousin "were all close family members with a strong motive to fabricate an alibi defense for him. As such, their testimony would not have been particularly compelling and would have been subjected to vigorous impeachment. If trial counsel had called these alibi witnesses and the jury had disbelieved them, the jury also could have inferred that [petitioner] was in fact the [perpetrator]."); Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *11 (E.D. La. Oct. 16,

2009) (noting that petitioner's "grandmother's testimony would have been of limited value because her close familial relationship to the petitioner would have made her testimony inherently suspect"); Sholes v. Cain, 2008 WL 2346151, at *15 (E.D. La. June 6, 2008) (noting that petitioner's girlfriend would be an inherently suspect alibi witness); Talley v. Cain, Civ. Action No. 08-3542, 2009 WL 916331, at *11 (E.D. La. Apr. 6, 2009) (noting that alibi testimony from the petitioner's mother would have been inherently suspect); United States ex rel. Emerson v. Gramley, 902 F.Supp. 143, 147 (N.D. Ill.1995) (noting that petitioner's mother was an "interested witness" and, therefore, "would not have provided persuasive evidence of an alibi"), aff'd, 91 F.3d 898 (7th Cir. 1996).

(Rec. Doc. 22, ay 19-20). The Magistrate then emphasized that balancing such factors and making such a decision was clearly within the acceptable range of representation.

Even if the Court agreed with the Magistrate's reasoning with regard to counsel's failure to call witnesses, the Report and Recommendations does not address the second part of Kately's claim: that his counsel was ineffective for failure to interview the witnesses and investigate the case. Specifically, the

4

petition alleges that counsel failed to interview two alibi witnesses and several eyewitnesses to the murder.

The prosecution's case was dependent on the testimony of a 14-year girl, who identified Petitioner as the murderer several days after the crime, after she saw petitioner in a dream. The state did not have any corroborating evidence. Prosecution's main witness Ms. Howard testified that immediately prior to the murder, there were three people on the stairway where the murder occurred, including the murder victim. It appears from the record that defense counsel, Harry Boyer, put no effort into trying to locate the third person, Marvin Blake.[1] There were several other witnesses near the murder scene, none of whom appear to have been interviewed by Kately's trial counsel.

Additionally, the two witnesses that waited outside of the courtroom testified that Harry Boyer never once saw them before trial. In fact, they learned about the trial from relatives of Defendant. There is no record of subpoenas being issued for these witnesses. Harry Boyer did bring up their names during his opening statement. However, he did state one name wrong and did not pronounce the full name of the other, which may be an indication that he was not familiar with them at all. No mention

---

[1] He was subpoenaed to appear at Kately's post conviction hearing but failed to appear. When Kately's post conviction counsel requested that the Judge issue a capias, the Judge refused.

5

was made of Marvin Blake.

The Fifth Circuit has a long line of well-established precedent holding that failure to investigate and interview witnesses cannot constitute counsel's reasonable professional conduct. In <u>Nealy v. Cabana</u>, 764 F.2d 1173 (5th Cir. 1985), Judge Alvin Rubin opined that petitioner's counsel's failure to contact potential alibi witness and locate witnesses who could have corroborated petitioner's testimony was ineffective assistance of counsel. Underscoring the Fifth Circuit's recognition that effective counsel must conduct a reasonable amount of pretrial investigation, Judge Rubin stated that "at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case." <u>Id.</u> at 1177 (citing <u>Bell v. Watkins</u>, 692 F.2d 999, 1009 (5th Cir.1982); <u>Rummel v. Estelle</u>, 590 F.2d 103, 104 (5th Cir.1979)).

In <u>Bryant v. Scott</u>, 28 F.3d 1411 (5th Cir. 1994), the Fifth Circuit reversed the district court's denial of a state prisoner's petition for habeas relief, concluding that counsel was ineffective for failing to investigate and interview alibi witnesses made known to counsel three days before trial, failing to interview eyewitnesses, and failing to interview a codefendant who maintained that petitioner was not a perpetrator of the

robbery. The Court noted that "an attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, 'are virtually unchallengeable.'" Id. at 1415 (citing Strickland, 466 U.S. at 691). Nonetheless, "an attorney must engage in a reasonable amount of pretrial investigation and 'at a minimum, . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances in the case.'" Id. (citing Nealy, 764 F.2d at 1177). The Court then held that "[b]ecause there was no physical evidence connecting [petitioner] with the crime, the eyewitness identification of [petitioner] at the crime scene was the cornerstone of the state's case in chief," and that "failure to interview eyewitnesses to the crime was constitutionally deficient representation." Id. at 1418.

More recently, in Anderson v. Johnson, 338 F.3d 382 (5th Cir. 2003), the Fifth Circuit once again emphasized that trial counsel's failure to interview an eyewitness rose to the level of a constitutionally deficient performance, which prejudiced the defendant. The Court reviewed Fifth Circuit precedent that "rejected the notion that 'vigorous' cross-examination of eyewitnesses at trial can 'cure' counsel's failure to interview the witnesses before trial." Id. at 391 (citing Bryant, 28 F.3d

at 1419). Further, the Court noted that the Fifth Circuit "squarely rejected the argument . . . that a failure to interview witnesses is excusable as 'a strategic decision' if the witnesses would not have been credible." Id. at 392. Noting that the "fact that trial counsel was marginally successful in some respects does not excuse his complete failure to investigate and prepare *before* trial," the Court found that "there [was] no evidence that counsel's decision to forego investigation was *reasoned* at all, and [was] far from *reasonable.* Counsel's failure to investigate was not 'part of a calculated trial strategy' but is likely the result of either indolence or incompetence." Id. at 393.

 Applying the standard pronounced by the United States Supreme Court in Harrington, 131 S.Ct. at 788, the inquiry in this case is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." A thorough review of state court record reveals that the issue of failure to investigate and interview witnesses, although raised by Defendant, was only marginally addressed during the post-conviction hearing. In fact, Tyrone Jordan testified during the post-conviction hearing that neither Mr. Boyer nor any other attorney that may have represented Kately ever contacted him (Rec. Doc. 17, at 6). Similarly, Devone Mitchell testified that she did not recall speaking to anybody until it was time for

court (Rec. Doc. 17, at 15). Furthermore, during the post-conviction hearing the trial judge denied Kately's counsel's request that a capias be issued on the third witness, Marvin Blake (Rec. Doc. 20). Kately's post-conviction counsel witnessed Marvin Blake receive the subpoena to testify at Kately's post-conviction hearing. However, Blake did not show up.

Although Harry Boyer was questioned about his decision not to call the two witnesses at trial, it is unclear what effort, if any, Mr. Boyer applied in independently investigating the case and interviewing witnesses. Mr. Boyer mentioned that he was sure he spoke with Jordan and Mitchell before trial, but could not "say specifically" whether he investigated Marvin Blake (Rec. Doc. 17, at 29). The trial judge then refused to issue a capias on Marvin Blake (Rec. Doc. 17, at 32). This ended the post-conviction court's inquiry into Mr. Boyer's efforts to investigate and interview witnesses. Thus, it is unclear whether Marvin Blake was ever interviewed by Harry Boyer. Furthermore, prosecution's witness Ms. Howard testified that there were other people in the immediate vicinity of the crime scene at the time the victim was shot—Jack, Jared, and Aaron (Trial Transcript, at p. 132). There is no indication that Harry Boyer interviewed those witnesses either.

Applying the statutory presumption of correctness to the

state court's factual determinations and viewing the claims actually ruled upon through the deferential lens of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the decision to grant to a state prisoner an evidentiary hearing is within the discretion of the federal district court. Murphy v. Johnson, 205 F.3d 809, 815 (5th Cir. 2000). Under 28 U.S.C. § 2254(e)(2), a court may grant an evidentiary hearing if petitioner's "claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Because the Court now concludes that petitioner did not receive a full and fair evidentiary hearing in a state court, the Court deems it necessary to conduct an evidentiary hearing, the purpose of which shall be to establish whether Harry Boyer failed to investigate and interview witnesses, which "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

    Accordingly, **IT IS ORDERED** that Petitioner's Request for an evidentiary hearing is **GRANTED. IT IS FURTHER ORDERED** that, in

interest of justice, counsel shall be appointed to assist Petitioner. A status conference shall be set after counsel is appointed.

New Orleans, Louisiana this the 27th day of May, 2011.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE