UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATELY                                    CIVIL ACTION

VERSUS                                    NO: 10-1057

CAIN, ET AL.                              SECTION: "J" (2)

**ORDER AND REASONS**

Before the Court is Petitioner Benedict Kately's Petition
for Writ of Habeas Corpus (Rec. Doc. 3) filed under Title 28
U.S.C. § 2254 challenging a June 17, 2003 conviction for first
degree murder.  Upon a thorough review of the petition, the
record, the legal memoranda, the law, and the United States
Magistrate Judge's and the Court's own findings and orders in
this matter, the Court finds that Kately is entitled to relief.

**PROCEDURAL HISTORY**

The Magistrate Judge previously stated the facts and
procedural history relevant to the instant *habeas* proceeding.[1]

---

[1] See Rec. Doc. 22.  The Court fully adopts the Magistrate Judge's
statement of facts and procedural history.  The Court also adopts the
Magistrate Judge's finding that Petitioner timely filed his *habeas*

1

The petitioner, Benedict Kately, was convicted in state court of first degree murder under Louisiana law on June 17, 2003. The conviction was based upon the jury's finding that Kately shot and killed the victim on the evening of September 13, 2002 at the Lafitte Project in New Orleans. The sole testifying eyewitness to the crime was a teenage girl named Ernestine Howard, who identified Kately in a photograph line-up. Howard testified at trial that although at the time of the crime she was not aware that she knew the shooter's identity, during a dream she subsequently realized that she knew the shooter from the neighborhood. Subsequent to his conviction, Kately was sentenced to a term of life imprisonment without the benefit of probation, parole, or suspension of sentence. That conviction was affirmed on direct appeal. On April 27, 2005, Kately applied with the state district court for post-conviction relief, but the state court denied the application on July 17, 2008. The Louisiana Supreme Court denied a related writ application on January 22, 2010. Kately filed the instant *habeas corpus* petition with this Court on March 15, 2010, presenting his sole claim of ineffective assistance of counsel.

---

application.

In the petition, Kately argues that his trial counsel, Harry
Boyer, was constitutionally ineffective for failure to call at
least two key witnesses at trial. Petitioner also alleges that
Boyer's assistance was constitutionally ineffective because of
Boyer's failure to investigate and subpoena for trial several
alibi and exoneration witnesses. In his Report and
Recommendation (Rec. Doc. 22), the Magistrate Judge, after
finding that Petitioner had timely filed[2] and stating the
statutory standard of review under the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA")[3], explicated the
nature of Petitioner's claim and recommended the dismissal of
Petitioner's *habeas* petition with prejudice. Petitioner objected

---

[2] As previously noted, the Court adopts the Magistrate Judge's finding
that Petitioner's *habeas* application was timely filed. Rec. Doc. 22, at 3-4.
After making a finding of timeliness, the Magistrate, in a footnote, stated
that the State "halfheartedly" contended that Petitioner's claim may not have
been properly exhausted. Id. at 4. However, the Magistrate proceeded with
his discussion, stating that a federal court has authority to deny a *habeas*
claim on the merits regardless of whether a petitioner exhausted state court
remedies. Although the State suggests that Petitioner procedurally defaulted
on his sole federal *habeas* claim, that contention is without merit. The State
avers that Petitioner raised his ineffective-assistance claim in his state
post-conviction relief application and re-urged the claim in his Louisiana
Supreme Court writ application, *but* in his *intermittent* writ application to
the Louisiana Fourth Circuit, failed to specifically mention the ineffective-
assistance issue. However, the State admits that Petitioner in said writ
application did reference his original post-conviction application (in which
he argued the ineffective-assistance claim) and attached a copy thereof to the
writ application. The Court is persuaded that Petitioner did not procedurally
default or fail to exhaust state court remedies.

[3] The Court fully adopts the Magistrate Judge's statement of the AEDPA
standard of review. Rec. Doc. 22, at 5-7.

to the Magistrate's report (Rec. Doc. 23). This Court issued an
Order (Rec. Doc. 24) on May 27, 2011 that declined to adopt the
Report and Recommendation. The Court found that even if the
Magistrate was correct that the state court was reasonable in
finding that Boyer's failure to call witnesses was acceptable
legal representation, the Report and Recommendation did not
address the argument of ineffective assistance of counsel due to
Boyer's failure to interview witnesses and investigate the case
(Rec. Doc. 24, at 4-5).

The Court then turned to the facts adduced during state
post-conviction proceedings suggesting that under Fifth Circuit
precedent holding that a failure to investigate and interview
witnesses cannot constitute counsel's reasonable professional
conduct, counsel Boyer had not provided constitutionally
sufficient representation to Kately (Rec. Doc. 24, at 5-8).
Although this Court discussed the failure-to-call and failure-to-
interview-witnesses issues, the Court ultimately declined to rule
on the merits; finding that because the failure-to-interview
issue was only marginally addressed during the post-conviction
hearing (Rec. Doc. 24, at 8), the state court did not give
Petitioner a full and fair evidentiary hearing (Rec. Doc. 24, at
10). The Court then granted Petitioner's request for an

evidentiary hearing and further ordered that, in the interest of justice, counsel be appointed to assist Petitioner (Rec. Doc. 24, at 11). Counsel was appointed, though a hearing date was never set.

Subsequent to the Court's May 27, 2011 order, the State filed a Second Supplemental Response to Petition for *Habeas Corpus* Relief (Rec. Doc. 32), in which the State argued that a recent United States Supreme Court case, <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S. Ct. 1388 (2011), as applied to the facts of this case, forbids the introduction at a federal evidentiary hearing of evidence regarding any potential alibi or exoneration witnesses aside from Devone Mitchell and Tyrone Jordan, both of whom testified at Petitioner's state post-conviction relief hearing. The Petitioner then filed a Reply to Respondent's Second Supplemental Response to § 2254 Petition (Rec. Doc. 37), arguing that <u>Cullen</u> does not apply, as the State claims it does, to preclude the introduction of certain testimony at the evidentiary hearing. The State subsequently filed a Response to Petitioner's Reply to Respondent's Second Supplemental Response (Rec. Doc. 45), which argues that under <u>Cullen</u>, the proposed

testimony of Marvin Blake[4] should not be admitted at the
evidentiary hearing. Petitioner then moved for leave to file a
sur-reply (Rec. Doc. 47), which this Court granted (Rec. Doc.
50).[5] Petitioner also moved for leave to supplement the record
with the state court judgment denying post-conviction relief
(Rec. Doc. 48), which this Court granted (Rec. Doc. 49).
Finally, Petitioner moved for leave to file transcripts of state
court proceedings (Rec. Doc. 51) and for leave to file a reply
with excess pages (Rec. Doc. 53).

## DISCUSSION

Both the Magistrate Judge and the Court in previous
decisions have examined the law regarding the failure to call and
the failure to interview witnesses as theories of ineffective
assistance of counsel. Subsequent to the May 27, 2011 Order
granting an evidentiary hearing, the State and Petitioner have

---

[4] Petitioner notified the Court that "the person referred to in state
post-conviction proceedings as Marvin Blake is in fact Marvin Blanks, who was
killed the night of July 5, 2011. The previous week, however, undersigned
counsel and FPD investigator Robert Oliver interviewed Mr. Blanks." Rec. Doc.
47, at 2 n.1. Petitioner's counsel via telephone call informed the Court that
she intends to submit Blanks's testimony via an audio recording from said
interview.

[5] The Court ordered that said sur-reply "be filed within two weeks after
receipt of the transcripts of state court appearances in connection with post-
conviction proceedings before and after the evidentiary hearing of November
16, 2007." Rec. Doc. 50.

presented voluminous arguments, which the Court has considered,
regarding whether or not that decision was correct.  The United
States Supreme Court in Cullen, 131 S. Ct. at 1398, faced the
issue of "whether review under § 2254(d)(1) permits consideration
of evidence introduced in an evidentiary hearing before the
federal habeas court."  The Supreme Court held that "review under
§ 2254(d)(1) is limited to the record that was before the state
court that adjudicated the claim on the merits." Id.[6]  Thus, the
issue raised subsequent to the Court's granting of an evidentiary
hearing is whether this Court may allow certain (or any)
testimony, notably that of Marvin Blake, to be presented at a
hearing, if that testimony was not previously adduced during
state post-conviction proceedings.  Further, if the State's
argument under Cullen is correct, the Court must determine based
on the state court record alone to what relief, if any,
Petitioner is entitled.  For the reasons that follow, although
the Court finds persuasive the State's argument that a hearing
would be improper, the Court holds that there is no reasonable
argument that Petitioner Benedict Kately's trial counsel
satisfied the United States Supreme Court's standard for

---

[6] Because this matter involves an ineffective-assistance-of-counsel
claim, the analysis centers on § 2254(d)(1).  Pape v. Thaler, 645 F.3d 281
(5th Cir. 2011).

7

effective assistance of counsel; and therefore Petitioner is entitled to *habeas* relief.

**A. Application of <u>Cullen</u> and Partial Reversal of Prior Order**

The Court finds persuasive the State's argument that under <u>Cullen</u>, any testimony and documentary evidence that potentially could be introduced at an evidentiary hearing would have to be limited, if allowable at all. The Supreme Court in <u>Cullen</u> expressly held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 131 S. Ct. at 1398. The State argues that this holding directly applies to the present case, to prevent Petitioner from presenting "*any* evidence, either documentary or testimonial, regarding the purported trial testimony of Marvin Blake in support of his assertion that the Louisiana courts unreasonably denied his claim . . . . Indeed, this Court may not consider evidence regarding any potential alibi witnesses aside from Davonne Mitchell and Tyrone Jordan." Rec. Doc. 32, at 8-9. This argument is meritorious under <u>Cullen</u>.

The Supreme Court in <u>Cullen</u> was clear: "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation

of § 2254(d)(1) on the record that was before that state court."
Cullen, 131 S. Ct. at 1400. The Fifth Circuit has rigidly
applied Cullen. In Pape v. Thaler, 645 F.3d 281 (5th Cir. 2011),
the Fifth Circuit found that the federal district court should
not have granted the petitioner an evidentiary hearing, on facts
similar to those of the present case. In Pape, as in the present
case, the Magistrate Judge issued a report and recommendation to
deny the relief requested in the *habeas* petition, and the
district court held an evidentiary hearing. In Pape, the
district court's reason for doing so was to allow the petitioner
to "fully develop his claim that trial counsel rendered
ineffective assistance of counsel" (id. at 286)—essentially the
same reason that this Court granted a hearing (Rec. Doc. 24, at
10). Among the theories for ineffective assistance of counsel
presented was a failure-to-investigate theory, akin to the
present case. Pape, 645 F.3d at 289.

Interpreting Cullen, the Fifth Circuit in Pape stated that
the Supreme Court "concluded that § 2254(d)(1) bars a district
court from conducting such an evidentiary hearing because the
statute 'requires an examination of the state court decision at
the time it was made,' which limits the record under review to
'the record in existence at that same time *i.e.*, the record

before the state court.'" Pape, 645 F.3d at 288. The Fifth
Circuit then reversed the district court's decision: "Under
[Cullen] however, the district court erred by conducting the
evidentiary hearing and by relying on evidence from that hearing
to conclude that the state habeas court had unreasonably applied
Strickland." Id. Likewise, in McCamey v. Epps, 658 F.3d 491,
496-98 (5th Cir. 2011), the Fifth Circuit reversed the district
court's decision granting an evidentiary hearing because it
interpreted Cullen to limit § 2254(d)(1) review to the state
court record. This Court is bound by precedent. The prior order
of May 27, 2011 (Rec. Doc. 24) granting a hearing without an
initial § 2254 determination on the state court record alone was
incorrect in light of Cullen and subsequent Fifth Circuit
precedent.[7]

In partially reversing the prior order granting an
evidentiary hearing, the Court has given much consideration to
Petitioner's arguments but ultimately rejects them. Petitioner
argues that the state court did not reach the merits of the

---

[7] This Court's prior contrary holding was based on § 2254(e)(2), which
allows a hearing to be granted under certain circumstances. See Rec. Doc. 24,
at 10. However, the Fifth Circuit in Pape clarified that the Supreme Court in
Cullen "held that § 2254(e)(2) was not applicable to § 2254(d)(1) petitions
such as Pape's." Pape, 645 F.3d at 288. See also McCamey, 658 F.3d at 497
(Section 2254(e)(2) applies to claims to which § 2254(d) does not apply, which
are claims that were not adjudicated on the merits in state court).

failure-to-investigate claim, and thus <u>Cullen</u> does not apply.

<u>See</u> <u>Cullen</u>, 131 S. Ct. at 1398 (stating that review under §

2254(d)(1) is limited to the record of the state court that

adjudicated *the claim* on the merits). The Court previously

stated in its Order of May 27, 2011 that the issues of failure to

investigate and interview witnesses were only marginally

addressed at the state post-conviction hearing. Rec. Doc. 24, at

8. The Criminal District Court, in its judgment denying Kately's

application for post-conviction relief, merely held that it would

be "second guessing" to "fault trial counsel for their decision

not to *call* any witness." Rec. Doc. 48-2, at 2 (emphasis added).

However, even if this language in the state court judgment

indicates that the state court focused primarily on the failure-

to-*call*-witnesses theory of the claim, this does not mean that

the court did not adjudicate the claim on the merits.[8] The *claim*

was ineffective assistance of counsel. Whether that claim is

couched or argued as the failure to *call* witnesses or the failure

to *interview* them, the claim is unitary and was considered by the

state post-conviction court. Thus, under <u>Cullen</u>, this Court may

_____

[8] The mere fact that the state court judgment was brief in describing
the rationale for its conclusion does not mean that its decision was an
unreasonable application of the <u>Strickland</u> standard for ineffective assistance
of counsel. <u>See</u> <u>Harrington v. Richter</u>, 131 S. Ct. 770, 784 (2011) (stating
that the § 2254 inquiry does not require that the state court have given an
opinion explaining its reasoning).

11

not now entertain evidence that was not before the state judge in considering the reasonableness of the state court's decision denying the ineffective-assistance-of-counsel claim on the merits.

Petitioner also argues that because the state court during the post-conviction hearing refused to issue a *capias* for Marvin Blake, Petitioner should be allowed to introduce new evidence during federal *habeas* review. In <u>Cullen</u>, Justice Sotomayor in dissent assumed that the majority did not intend to reach the situation where "a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself." <u>Cullen</u>, 131 S. Ct. at 1417 n.5. Thus, Petitioner argues that where the state court impeded his development of the record, <u>Cullen</u> should not be read to prohibit this Court from considering the substance of what he attempted to introduce into the record, *i.e.*, Marvin Blake's would-be testimony. Even if <u>Cullen</u> could be interpreted to permit an exception for when a state court impedes a petitioner's introduction of evidence, the non-issuance of a *capias* was not such an impediment.[9] At least one Louisiana court interpreting Louisiana law has recognized the discretionary

---

[9] Indeed, the "state-created impediment" argument can be starkly contrasted with <u>Cullen</u>'s unambiguous language: "[E]vidence introduced in federal court has **no bearing** on 2254(d)(1) review . . . ." 131 S. Ct. at 1400 (emphasis added).

nature of issuance of a *capias*.  See State v. George, 652 So. 2d

1382, 1391 (La. App. 2d Cir. 1995) ("It is within the discretion

of the trial court to issue an order of attachment for a witness

who fails to appear.") (citing LA. CODE CRIM. PROC. art. 737).  It

does not appear to this Court that the state court unreasonably

decided not to issue a *capias*, especially where the post-

conviction evidentiary hearing transcript reveals that Marvin

Blake "did *not* have a subpoena to be here today."  Rec. Doc. 17-

1, at 32 (emphasis added).[10]  The state court stated that it gave

_____

[10] Whether Petitioner exercised "due diligence" in requesting a subpoena
for Blake is a subject of great dispute between Petitioner and the State.  The
State portrays the scenario as follows:  at the November 16, 2007 post-
conviction hearing, Judge Bigelow rebuked Petitioner's counsel for his
previous failure to subpoena Blake.  Rec. Doc. 42-2, at 7.  The judge's reason
for denying the request for issuance of a *capias* was Petitioner's failure to
subpoena.  Id.  Thereafter, the hearing was held open; it was continued two
more times.  Id. at 8.  However, it was not until a third date, more than two-
and-a-half months after the judge's original admonishment, that Petitioner
finally had a subpoena issued to Blake at a New Orleans address.  Id.  The
hearing was continued four more times before Judge Bigelow denied the
application for relief on July 17, 2008.  Id.  Therefore, the State argues,
"[t]his is not the sort of diligence required by the Supreme Court to overcome
the AEDPA's presumption against granting federal evidentiary hearings."  Id.
On the other hand, at the November 16, 2007 hearing, Petitioner's counsel
informed the court that Blake had been served to appear at the hearing that
day.  Id.  He then clarified that Blake had showed up at a prior hearing date,
but that the hearing date had been continued.  Id.  Judge Bigelow then asked
whether Blake had been subpoenaed to come back to court on November 16, to
which counsel responded that he had been subpoenaed for the last hearing date,
which was continued until November 16.  Id.  He had not showed up at the
immediately preceding hearing date.  Id.
     The Court declines to decide whether Petitioner exercised the due
diligence that arguably would be a condition precedent to *capias* issuance.
The Court does not foreclose the possibility that Cullen may admit an
exception for a state-created impediment or even a due process exception for
instances in which a post-conviction court does not afford a petitioner the
opportunity to present the testimony of certain witnesses.  However, the Court
need not decide the issue because such a decision would not be essential to
the Court's ultimate holding that Petitioner is entitled to relief.  The

Kately several additional opportunities to present Blake's testimony, but Blake did not appear; and Kately's counsel decided not to call Blake as a witness. Rec. Doc. 48-2, at 1. In any case, the Court does not believe that the state court unlawfully obstructed Petitioner's introduction of Blake's would-be testimony during post-conviction proceedings.[11]

In summary, the Court must address the merits of Petitioner's claim on the basis of the record before the state court that adjudicated it. This Court previously stated that even if it agreed with the Magistrate's recommendation concerning the failure to call witnesses, the Magistrate did not consider trial counsel's alleged failure to investigate and interview witnesses. The Court originally concluded that because Petitioner "did not receive a full and fair evidentiary hearing in a state court," it would conduct an evidentiary hearing "to establish whether Harry Boyer failed to investigate and interview

_____

Court's decision that it erred in granting a hearing does not consider the range of possible arguments regarding state-created impediments and due process, because the Court finds that Petitioner is entitled to relief absent a consideration of the potential testimony of Marvin Blake (whose potential testimony was not before the state court).

[11] Petitioner argues that under <u>Williams v. Taylor</u>, 529 U.S. 420 (2000), because he diligently tried to develop the factual basis of his claim in state court, an evidentiary hearing may be held. However, the Fifth Circuit in <u>McCamey</u> held that <u>Williams</u> does not apply to claims under § 2254(d)(1) that were adjudicated in state court. <u>McCamey</u>, 658 F.3d at 498. As previously noted, Petitioner's claim was adjudicated in state court; therefore, <u>Williams</u> does not apply.

14

witnesses" as to constitute constitutionally ineffective assistance. Rec. Doc. 24, at 10. However, the Court has found that it erred under <u>Cullen</u> in granting said hearing. True, this Court previously pointed out that "[t]here were several other witnesses near the murder scene, none of whom appear to have been interviewed by Kately's trial counsel." Rec. Doc. 24, at 5. The substance of what these witnesses would have testified at trial was not before the state court. The fact that the state court had scant evidence before it concerning the failure-to-investigate/interview issue does not mean that the federal district court can order a hearing to pull in more evidence supporting the claim. Under <u>Cullen</u>, Petitioner must attempt to carry his federal *habeas* burden using the evidence he adduced during state post-conviction proceedings.

**B.  Merits of Petitioner's Claim**

**1.  Evidence Before the State Court**

The Court now turns to the evidence that was before the state court. That evidence was truly limited as to the potential testimony of Marvin Blake. On at least two hearing dates, Blake failed to show up in court. Rec. Doc. 17-1, at 20-21. Petitioner's post-conviction counsel stated that if called to testify, Blake would have stated that he was with the victim at

the time of death and would assert that the perpetrator was not Petitioner. Id. at 21. However, two other witnesses did appear to testify before the state court on November 16, 2007.

The testimony of Tyrone Jordan was that he was never contacted by Petitioner's attorney, Mr. Boyer, or any other of Petitioner's attorneys. Rec. Doc. 17-1, at 6. Jordan testified that the only way he knew of Petitioner's trial was that Petitioner's brother informed him of the trial. Id. at 7. He stated that if he had been called to testify at trial, he would have provided an alibi defense. Id. The nature of his alibi testimony would have been that Jordan was with Petitioner on the night of the shooting, and therefore that Petitioner could not have been the perpetrator. Jordan would have testified that the Petitioner and he went to a DJ at 7:00 p.m., then went to Jordan's house and played video games for three or four hours, next went to a daiquiri shop for about 30 minutes, and finally returned to the area near the Lafitte Project, where Jordan dropped off Petitioner from Jordan's automobile between 9:30 and 10:00 p.m. Id. at 5. Jordan would have testified that upon dropping Petitioner off, they both looked a block down the street (where the shooting occurred) and saw police cars with their lights on. Id. at 5-6.

Devone Mitchell was also present at the post-conviction hearing. Initially, she testified that she did not recall speaking to any of Petitioner's attorneys until the day of the trial. Id. at 15. She then stated that the only way she knew of the trial was that her aunt had informed her of the trial. Id. at 16. The judge asked if Mitchell believed that her aunt told the lawyer what she had seen, to which Mitchell replied, "I guess, yes." Id. at 17. However, she then clarified that she never spoke with Petitioner's trial attorney until the day of trial and had not received a subpoena. Id. at 18-19. Still, the State during cross-examination suggested that Mitchell's name had been on the witness list, which Mitchell could neither affirm nor deny. Id. at 19. Mitchell stated that if she had been called to testify at trial, she would have testified that she saw two men approach the porch where the shooting occurred and heard shots fired a few seconds later, and that neither of these men was the Petitioner. Id. at 13-14, 16. She would have testified that at the time of the shooting, she was "not far at all" from the porch where the shooting happened, about 30 feet. Id. at 12. She testified that had she been called to testify at trial, she would have testified the same as she did at the post-conviction hearing. Id. at 16.

17

Clearly, based on Jordan's and Mitchell's testimony, the state court could have concluded that material witnesses were not interviewed prior to trial. However, trial counsel Boyer's testimony was arguably somewhat contradictory of Jordan's and Mitchell's testimony. Boyer testified that he learned of Jordan and Mitchell through an investigation—he thought from Petitioner, "or from the police report." Id. at 23. He stated that although he conducted an investigation, he could not remember how he obtained the names of these witnesses. Id. At first, Boyer stated he was sure that he or his co-counsel spoke with the witnesses before trial or during trial. Id. at 24. Later during the hearing, he recalled that he had spoken with Jordan before trial, but then equivocated that he could not tell if he spoke with the witnesses "10 minutes before they were getting called to testify, or the day before, [or] the week before." Id. at 29. His statement applied to Jordan, Mitchell, and Marvin Blake. Id. Regarding Blake in particular, Boyer could not say why he was not on the witness list and clearly stated that he could not recall whether he investigated Blake, or even who he was. Id. The question is whether the state court's finding of effective assistance—in light of the testimony of Mitchell, Jordan, and Boyer—was reasonable in light of established Supreme Court case

18

law.  See 28 U.S.C. § 2254(d)(1).  The "clearly established

federal law" applicable to an ineffective-assistance-of-counsel

claim like Petitioner's is the Strickland test, which requires a

showing of (1) constitutionally deficient performance and (2)

resulting prejudice.  Anderson v. Johnson, 338 F.3d 382, 390 (5th

Cir. 2003) (citing Strickland v. Washington, 466 U.S. 668

(1984)).

**2.  Reasonableness of the State Court's Decision**

To determine whether the state court reasonably denied

relief, the Court addresses each Strickland prong separately.  As

the Magistrate correctly noted, "[a] petitioner seeking relief

must demonstrate that counsel's performance was deficient *and*

that the deficient performance prejudiced his defense. Strickland

v. Washington, 466 U.S. 668, 697 (1984)."  Rec. Doc. 22, at 12.

**a.  Deficient Performance**

The Magistrate Judge correctly stated the requisite showing

under the deficiency prong:

> To prevail on the deficiency prong of the Strickland
> test, a petitioner must demonstrate that counsel's
> conduct fails to meet the constitutional minimum
> guaranteed by the Sixth Amendment. See Styron v.
> Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's
> performance is deficient if it falls below an objective
> standard of reasonableness." Little v. Johnson, 162
> F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's
> performance must take into account the reasonableness

19

> of counsel's actions in light of all the circumstances.
> See Strickland, 466 U.S. at 689. "[I]t is necessary to
> 'judge ... counsel's challenged conduct on the facts of
> the particular case, viewed as of the time of counsel's
> conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371
> (1993) (quoting Strickland, 466 U.S. at 690). A
> petitioner must overcome a strong presumption that the
> conduct of his counsel falls within a wide range of
> reasonable representation. See Crockett v. McCotter,
> 796 F.2d 787, 791 (5th Cir.1986); Mattheson v. King,
> 751 F.2d 1432, 1441 (5th Cir. 1985).

Rec. Doc. 22, at 12.

As this Court discussed in its prior Order of May 27, 2011,

the Fifth Circuit has interpreted the "clearly established"

Supreme Court standard in Strickland to require an investigation

of alibi witnesses and interviews of witnesses.  Rec. Doc. 24, at

6-8 (citing Nealy v. Cabana, 764 F.2d 1173 (5th Cir. 1985);

Bryant v. Scott, 28 F.3d 1411 (5th Cir. 1994); Anderson v.

Johnson, 338 F.3d 382 (5th Cir. 2003)).[12]  In that Mitchell and

Jordan were clearly known to trial counsel Boyer prior to

---

[12] The Court hereby fully adopts its discussion regarding this case law
in its prior Order of May 27, 2011.  Rec. Doc. 24.  The Court notes the
extensive analysis provided by the Magistrate in his finding that Boyer's
failure to call witnesses was a reasonable trial strategy, and thus effective
assistance.  The Court notes without deciding that there is a plausible
argument that the failure to call witnesses in a *capital murder case*, where
those witnesses would have directly contradicted eyewitness testimony
implicating the petitioner, was ineffective assistance.  However, as the Court
reaches its ultimate conclusion based on the failure to *interview* witnesses,
the Court stands by its previous decision not to address the issue of failure
to *call* them.  Rec. Doc. 24, at 4-5.

trial,[13] Boyer's performance was deficient if he did not

interview these individuals prior to trial.  This is especially

true as to Mitchell, who allegedly saw the perpetrator:  where,

as in this case, there is no physical evidence and thus the

State's case hinges on eyewitness testimony, a reasonable lawyer

would interview alleged eyewitnesses to ascertain their potential

testimony.  See Bryant, 28 F.3d at 1418 (where no physical

evidence connected the defendant to the crime, eyewitness

identification was the cornerstone of the state's case in chief,

and thus "a reasonable lawyer would have made some effort to

investigate the eyewitnesses' testimony").  Thus, the Court must

determine whether the state court could have reasonably found

that Boyer, in fact, interviewed these key witnesses in advance

of trial.  See 28 U.S.C. § 2254(d)(2) (habeas relief will not be

granted unless the state court decision "was based on an

unreasonable determination of the facts in light of the evidence

presented in the State court proceeding").

The state post-conviction judgment marginally addresses

whether the judge believed Boyer's testimony that he did

interview all potential witnesses.  Said judgment shows that the

_____

[13] These two witnesses were listed on the witness list.  See Rec. Doc.
17-1, at 19 (prosecutor suggesting that Mitchell's name was on a witness list
turned in by the attorney); at 28-29 (Petitioner's attorney suggesting that
Jordan's name was listed on the witness list that Boyer submitted).

court considered evidence pertaining to the failure-to-
investigate issue. The court considered Jordan's testimony that
the trial attorney did not speak with Jordan. Rec. Doc. 48-2, at
1. Additionally, the judge considered the fact that Boyer
testified that he did interview all potential witnesses. <u>Id.</u>
Yet, the judgment is so short as to call into question whether
the state court, in reaching its decision to deny relief,
specifically found that Boyer testified contrarily to Mitchell
and Jordan.[14] The judgment only discusses the failure-to-call-
witnesses aspect of the claim, and said discussion is terse at
most.[15] The state court's lack of attention to the failure-to-
interview/investigate component of the claim is noteworthy and
underscores the need for this Court to properly examine the
evidence that was before the court that denied relief.

The clincher is that for the state court to reach the
decision it did—denying relief—it would have needed to find that

_____

[14] Of course, the inquiry is whether there is a reasonable basis for the
state court's decision, not whether the articulated decision was reasonable.
<u>Harrington</u>, 131 S. Ct. at 784 ("Where a state court's decision is
unaccompanied by an explanation, the habeas petitioner's burden still must be
met by showing there was no reasonable basis for the state court to deny
relief.").

[15] The two-page judgment, which is almost solely factual recitation and
<u>Strickland</u>-standard recitation, was premised entirely on the following: "To
fault trial counsel for their decision to not call any witnesses would be
engaging in precisely the sort of second guessing that is not permitted.
Consequently, this Court cannot say that the assistance provided by trial
counsel to Mr. Kately was ineffective[.]" Rec. Doc. 48-2, at 2.

Boyer, *in fact*, interviewed Mitchell and Jordan in advance of trial to ascertain their potential testimony. Such a finding would *not* be supported by the evidence adduced at the evidentiary hearing on November 16, 2007. Jordan and Mitchell both testified that they did not speak to Boyer prior to the trial. Boyer did not unequivocally testify to the contrary. When asked whether he spoke to these witnesses, he responded, "I'm sure we did. I did, Mr. Smith did. I believe during the trial, I don't recall who spoke to them. But we didn't call them." Rec. Doc. 17-1, at 24. However, his initial statement that he was "sure" someone spoke to them is undermined by his clear statement that he actually did not know whether the witnesses were interviewed prior to trial: "[A]t some point in time – *I can't tell you if it was 10 minutes before they were getting called to testify*, or the day before, the week before. But I believe there was [sic] several conversations with those folks." Rec. Doc. 17-1, at 29 (emphasis added). Whether these witnesses were interviewed prior to trial is a question of fact governed by Title 28 U.S.C. § 2254(d)(2). See <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000). Although the state court made no specific determination as to whether Boyer interviewed witnesses and investigated the case, the Court finds that based on the failure of proof that any such

investigation occurred, the state court's decision denying post-conviction relief outright was "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Admittedly, when one witness's testimony contradicts that of another, a factual issue is created. Thus, if Boyer had unequivocally testified that he interviewed Mitchell and Jordan to determine whether they could provide exculpatory testimony, this would have required the state court to weigh Boyer's credibility against that of Mitchell and Jordan—who testified that Boyer did not contact them. And if the state court had then found Boyer more credible, this Court would be bound to defer to such a finding. However, Boyer repeatedly stated that he could not recall what type of investigation he did. See Rec. Doc. 17-1, at 23 ("I can't recollect exactly how they [the names of the witnesses] came up."); at 24 (upon being asked, "Did you speak to these witnesses at any point *before* trial?", responding, "I'm sure we did. I did, Mr. Smith did. I believe ***during the trial***, *I don't recall who spoke to them*.") (emphasis added); at 28-29 (upon being asked whether he spoke with Jordan before the trial, Boyer stating, "*As I recall*, I spoke to him, an investigator

24

spoke to him, Mr. Smith spoke to him.  Everybody. . . . *At some*

*point in time – I can't tell you if it was 10 minutes before they*

*were getting called to testify, or the day before, the week*

*before.  But I believe there was [sic] several conversations with*

*those folks*.") (emphasis added).[16]  Where Boyer did not

unequivocally state that he had interviewed the witnesses, and

the witnesses unequivocally stated that he had not, any factual

finding by the state court that the witnesses were interviewed

was manifestly erroneous.

Thus, the state court's implicit finding that Boyer's

performance was not deficient was clearly erroneous, and

Petitioner has carried his burden by clear and convincing

evidence rebutting the presumption of correctness of the state

court's factual determination under Title 28 U.S.C. § 2254(e)(1).

As to the first <u>Strickland</u> prong, Boyer's assistance was

deficient for the failure to interview a key alibi witness and a

key exoneration witness.  Without a basic investigation of the

---

[16] Although the Court does not base its ultimate holding on any failure to interview Marvin Blake (because he did not testify in the state proceeding), the fact that Boyer could not recall having interviewed him either is telling.  <u>See</u> Rec. Doc. 17-1, at 29 (upon being questioned regarding Marvin Blake, Boyer stating, "Same, same response." (that he could not tell at what point he had spoken with witnesses)); <u>id.</u> (upon being asked whether he spoke with Blake "[i]n preparation for a first degree murder trial," Boyer responding, "I don't remember the name.  I don't remember his face. . . . I cannot say specifically I'm sure we investigated him; I can't say I didn't.  *I just don't recall*.") (emphasis added).

exculpatory testimony that Mitchell and Jordan could have
provided in a capital murder case, Boyer did not provide the
representation guaranteed to Petitioner by the Sixth Amendment.[17]

### b. Actual Prejudice

The second <u>Strickland</u> prong requires that Petitioner show
actual prejudice resulting from the lawyer's deficient
performance.  466 U.S. at 692.  The Magistrate correctly stated
the appropriate standard for showing prejudice:

> In order to prove prejudice with respect to trial
> counsel, a petitioner "must show that there is a
> reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding
> would have been different." <u>Strickland</u>, 466 U.S. at
> 694. In this context, a reasonable probability is "a
> probability sufficient to undermine confidence in the
> outcome." <u>Id</u>. In making a determination as to whether
> prejudice occurred, courts must review the record to
> determine "the relative role that the alleged trial
> errors played in the total context of [the] trial."
> <u>Crockett</u>, 796 F.2d at 793.

Rec. Doc. 22, at 12-13.

There is clearly a reasonable probability that but for trial
counsel's failure to interview key witnesses, the outcome of the
trial would have been different.  If Boyer had interviewed these
witnesses to timely ascertain their potential testimony, he would

---

[17] <u>See</u> U.S. CONST. art. VI ("In all criminal prosecutions, the accused
shall enjoy the right . . . to have the Assistance of Counsel for his
defence.").

have been able to map out a defense that would have included presentation of these witnesses' testimony. Where the State's case hinged entirely on the testimony of sole eyewitness Ernestine Howard, there is a reasonable probability that Jordan's testimony that he and Petitioner were elsewhere (playing video games, stopping by a daiquiri shop, and visiting a DJ) at the time of the crime and arrived at the scene after the shooting had occurred and the police had already arrived; and Mitchell's testimony that she saw two men who approached the scene of the shooting, seconds later heard gunshots, and could affirm that neither of the men was the Petitioner; would have led the jury to conclude that the State had not met its burden of proof beyond a reasonable doubt.[18] This conclusion is buttressed by the fact that the sole eyewitness testified that at the time of the crime she was not aware that she knew the shooter, and only during a subsequent dream realized that she knew the shooter from the

---

[18] The Court notes that under Louisiana law, all 12 jurors must concur in a guilty verdict for a first degree murder charge. LA. CONST. art. I, § 17(A) (where punishment for an offense may be capital, all 12 jurors must concur to reach a verdict); LA. CODE CRIM. PROC. art. 782(A) (same); State v. Bishop, 68 So. 3d 1197, 1201 (La. App. 1st Cir. 2011) ("Prior to its amendment in 2007, LSA-R.S. 14:30 C merely provided that the penalty for first degree murder was 'death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the determination of the jury.'"). This supports a finding of actual prejudice: with direct evidence to contradict Howard's testimony, it is reasonably probable that at least one juror would have reasonably doubted Kately's guilt—and that an acquittal or a mistral would have resulted.

neighborhood.

The Court notes that it is not relying upon a theory that Boyer failed to call witnesses, but rather upon its finding that Boyer failed to investigate and interview witnesses, as proof of actual prejudice. One could argue that the failure to interview Mitchell and Jordan did not actually prejudice the outcome of Petitioner's trial because Boyer then would have failed to call these witnesses—a decision that arguably was a reasonable trial strategy. However, the Court's finding on the prejudice prong is guided by an assessment of "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793. Prejudice is shown where there is "a probability sufficient to undermine confidence in the outcome" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

If Boyer had actually ascertained the content of Mitchell's and Jordan's potential testimony in advance of trial, his analysis of whether to call them would have been vastly different. As an example, the Court notes Petitioner's assertion that Ernestine Howard's testimony that she had determined the shooter's identity via a dream was "surprise testimony." Rec.

Doc. 37, at 5.  Petitioner avers that "there was no mention of a dream at the pre-trial suppression hearing," so Boyer could not have known of this weakness in the State's case in advance of trial.  Id. at 5-6.  Therefore, if he had interviewed Jordan and Mitchell in advance of trial, he would have learned of the value of their potential testimony and likely planned to call them as witnesses to rebut the State's case.  However, because he did not interview them, he had no advance trial strategy not to call them.  It is not surprising that he subsequently chose not to call them when they were forced to show up of their own accord the day of trial and quickly relate to him the substance of their potential testimony.  Thus, it is sufficiently likely that if Boyer had performed an adequate investigation, he, in fact, would have called these witnesses at trial, and the outcome would have been different.  This is actual prejudice.  In the context of this capital murder trial, there is a probability sufficient to undermine confidence in the jury's verdict.[19]

---

[19] In fact, at the post-conviction hearing, Boyer testified that if the witnesses had at any point told him that they could, through their testimony, exonerate Kately, then he would have called them.  Rec. Doc. 17-1, at 24-25 (Boyer's response to direct question from prosecutor).  Boyer did clarify that he would not have chosen to call an alibi witness—which would include Jordan.  Id. at 25.  Still, the magnitude of the failure to interview key witnesses, considered in the context of the capital murder trial as a whole, sufficiently indicates that but for counsel's failure to investigate, he would have realized the vital nature of the witnesses' testimony and amended any trial strategy to include calling these witnesses; and thus (with reasonable probability) the outcome would have been different.  As Kately persuasively

29

The State's arguments that Petitioner cannot prove prejudice are unavailing. The State points out the following alleged problems with Mitchell's would-be testimony: her acknowledgment that she did not actually witness the murder; her description that both shooters' heads were covered, contradicted by Ernestine Howard's testimony that only one of them had a covered head; her claim that the shooting took place at a time earlier than when police testified the shooting occurred; and the lack of corroboration by law enforcement that Mitchell was at the scene at the time of the crime. Rec. Doc. 21, at 25. However, in spite of these alleged problems, there is a reasonable probability that Mitchell's testimony would have created a reasonable doubt in the jurors' minds as to whether Petitioner was the perpetrator. She saw the two men go to the porch where the murder occurred, and the mere lack of corroboration by law enforcement does not mean that Mitchell's testimony would not have created a reasonable doubt. Nor does the mere fact that Howard and Mitchell gave differing descriptions of the head apparel worn by the shooters change the reasonable probability that a hung jury or an acquittal would have resulted. Further,

_____

argues in his *habeas* petition, "[a]n actual failure to investigate cannot be excused by a hypothetical decision not to use its unknown results." Rec. Doc. 3, at 26.

the officers' testimony that the murder occurred at 10:30 or 11:00 p.m. is hardly contradictory of Mitchell's statement that the murder occurred "[m]aybe a little before 10:00, *or something like that*." Rec. Doc. 17-1, at 13 (emphasis added).

The State also poses alleged problems with Jordan's would-be alibi testimony. It argues that where a police officer testified that the shooting occurred at 10:30 or 11:00 p.m., at least half an hour after Jordan testified he dropped off Petitioner from his vehicle, the jury still would have been able to conclude that Petitioner was in the immediate vicinity of the shooting when it occurred. However, this does not forestall the conclusion that Jordan's testimony would have created a reasonable doubt based on testimony that Petitioner was not at the crime scene until after the police arrived. In the end, the State's arguments against a finding of actual prejudice amount to an assertion that a jury would have had enough evidence to convict, even with Mitchell's and Jordan's testimony before them. This argument is misplaced. Under Strickland, the addition of an alibi and an exoneration witness—where there had been no such witnesses to contradict the State's eyewitness testimony—creates a reasonable probability that the jury would reach a different conclusion with such evidence before it.

The Court holds that the state court adjudication resulted in a decision contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent under Title 28 U.S.C. § 2254(d)(1). This holding is consistent with the "doubly deferential" review mandated by <u>Harrington v. Richter</u>,[20] because the Court finds that there is no reasonable argument that, based on the evidence presented at the November 16, 2007 hearing, trial counsel satisfied <u>Strickland</u>'s demands. Petitioner has shown by a preponderance that his counsel was ineffective.[21] Petitioner's trial counsel was constitutionally ineffective, and the state court's decision to the contrary was unreasonable under § 2254.

## CONCLUSION

As the foregoing analysis demonstrates, Petitioner is

---

[20] "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The *standards created by* <u>Strickland</u> *and § 2254(d) are both* "*highly deferential,*" and when the two apply in tandem, *review is* **"doubly" so**. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 788 (2011) (emphasis added).

[21] "The defendant bears the burden of showing by a preponderance of evidence that he was deprived of the right of effective counsel." <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 1167 (2001).

entitled to relief. Petitioner received ineffective assistance of counsel due to trial counsel's failure to investigate and interview witnesses whose testimony would have severely undercut the State's case against Petitioner. Trial counsel's failure to render effective assistance undermines confidence in the outcome of the trial that led to Petitioner's conviction. Reviewed in light of the only reasonable determination of the facts adduced at the state post-conviction hearing and in light of Supreme Court case law applicable to the merits of the claim, Petitioner's conviction was obtained in violation of the United States Constitution and cannot stand. Accordingly,

**IT IS ORDERED** that petitioner Benedict Kately's application for *habeas* relief should be and is hereby **GRANTED** on his claim of ineffective assistance of counsel.

**IT IS FURTHER ORDERED** that Petitioner's June 17, 2003 conviction for first degree murder is hereby **VACATED**.

**IT IS FURTHER ORDERED** that the writ of *habeas corpus* will issue unless the State of Louisiana initiates retrial of Petitioner within 180 days after the entry of this order.

**IT IS FURTHER ORDERED** that this Court's previous Order (Rec. Doc. 24) is hereby **REVERSED IN PART**, only to the extent that it granted Petitioner an evidentiary hearing; but that the Order is

in all other respects unchanged.

**IT IS FURTHER ORDERED** that the Report and Recommendation of the United States Magistrate Judge (Rec. Doc. 22) is hereby rejected in part, to the extent that it recommended denial of the petition with prejudice; but that the portions of said Report and Recommendation that discuss facts, procedural history, timeliness, and standards of review are hereby adopted by the Court as its own opinion (Rec. Doc. 22, at 1-11).

**IT IS FURTHER ORDERED** that Petitioner's motion for leave to file transcripts of state court proceedings (Rec. Doc. 51) and motion for leave to file a sur-reply exceeding page limits (Rec. Doc. 53) are hereby **DENIED AS MOOT**.

New Orleans, Louisiana this <u>17th</u> day of January, 2012.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE